## A96A1664. THE STATE v. KAMPPLAIN.
(477 SE2d 143)

BIRDSONG, Presiding Judge.

On November 3, 1994, appellee/defendant Rickey Allen Kampplain a/k/a Ricky Allen Kampplain and Rick Allen Kampplain was stopped while driving a motor vehicle. He was given an implied consent warning and submitted to a breath test at the request of the police. Although a new Intoxilizer 5000 was present at the police station and certified operators were present, the police could not get the machine to operate properly; therefore, appellee was tested on an Intoximeter 3000, which did not have the Taguchi cell attached.

Appellee subsequently was charged with DUI, and he thereafter filed a motion to suppress the intoximeter test results. The parties stipulated to the facts relevant to the suppression motion, including the fact that the State could not produce a certificate of breath-testing instrument inspection in accordance with the current requirements of OCGA § 40-6-392. These pertinent statutory provisions require an express certification that the testing machine is "in good working order" and that "all its electronic and operating components prescribed by its manufacturer [are] properly attached." OCGA § 40-6-392 (a) (1) (A) and (f). After hearing argument of counsel, the trial court granted the motion to suppress the intoximeter results.

The State appeals from the order of the superior court suppressing the results of a breath test administered to appellant on the Intoximeter 3000. The motion to suppress was based on the State's failure to produce the inspection certificate required by OCGA § 40-6-392 (a) (1) (A) and (f) and on the alleged failure of the police to provide appellee with the opportunity to obtain an additional test pursuant to his request. However, in view of the ruling of the trial court granting the suppression motion after the first issue was addressed and argued, witnesses were not called to testify regarding the latter issue.

The State's sole enumeration of error is that the trial court erred when it suppressed the breath test results. Specifically, the State contends the trial court erred in concluding that OCGA § 40-6-392 (a) (1) (A) and (f), which was not enacted until April 21, 1995, required retroactive application and the suppression of the State's breath test.

The issue before us is whether the trial court erred in suppressing the Intoximeter 3000 test results when the State could not obtain proof that this particular machine would meet the statutory foundation requirements of OCGA § 40-6-392 (a) because the machine used for testing was not operated with all the electronic and operating components prescribed by its manufacturer properly attached thereto and in good working order. *Held*:

OCGA § 40-6-392 (a) in effect provides for the general admissibility of evidence of the amount of alcohol or drug in a person's blood, urine, breath, or other bodily substance as determined by chemical analysis thereof; however, to be considered valid, the results of such chemical analysis must comply with the provisions of OCGA § 40-6-392 (a) (1) (A). Subsection (a) (1) (A) pertinently provides: "Chemical analysis of the person's blood, urine, breath, or other bodily substance, *to be considered valid* under this Code section, *shall* have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which *was* operated with all its electronic and operating components prescribed by its manufacturer properly attached *and* in good working order *and* by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose. The Division of Forensic Sciences . . . *shall* approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits, along with requirements for properly operating *and* maintaining any testing instruments, *and to issue certificates certifying that instruments have met those requirements.*" (Emphasis supplied.) OCGA § 40-6-392 (f) further provides: "Each time an approved breath-testing instrument is inspected, the inspector *shall* prepare a certificate which shall be signed under oath by the inspector and which shall include the following language: 'This breath-testing instrument (serial no. _____) was thoroughly inspected, tested, and standardized by the undersigned on (date _____) and all of its electronic and operating components prescribed by its manufacturer are properly attached and are in good working order.' When properly prepared and executed, as prescribed in this subsection, the certificate *shall*, notwithstanding any other provision of law, be self-authenticating, *shall* be admissible in any court of law, and *shall* satisfy the pertinent *requirements* of paragraph (1) of subsection (a) of this Code section *and* subparagraph (g) (2) (F) of Code Section 40-5-67.1." (Emphasis supplied.) OCGA § 40-5-67.1 (g) (1) pertinently provides that if a person whose driver's license is suspended or who is disqualified from operating a commercial motor vehicle shall request a hearing in writing within the prescribed time, the hearing shall be held within 30 days after the Department of Public Safety receives notice of the

written request. OCGA § 40-5-67.1 (g) (2), as amended, pertinently provides that the scope of the hearing *shall* be limited to the following issues: "(F) Whether the test or tests were properly administered by an individual possessing a valid permit issued by the Division of Forensic Sciences . . . on an instrument approved by the Division of Forensic Sciences or a test conducted by the Division of Forensic Sciences, including whether the machine at the time of the test was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order, which *shall be required*. A copy of the operator's permit showing that the operator has been trained on the particular type of instrument used and one of the original copies of the test results or, where the test is performed by the Division of Forensic Sciences, a copy of the crime lab report shall satisfy the requirements of this subparagraph." (Emphasis supplied.)

Except for the statutory provisions of OCGA § 40-6-392 (a) (1) (B), pertaining to the requirement for the State to request "two sequential breath samples" when breath testing is elected by the State, which provision is not on its face here applicable (see generally the statutory construction provisions of *Diefenderfer v. Pierce*, 260 Ga. 426, 427 (396 SE2d 227) and progeny), the remaining statutory requirements shall apply to all cases pending at the time the Act was approved by the Governor, that is on April 21, 1995. Ga. L. 1995, p. 1164, § 5 and Editor's notes, OCGA § 40-6-392, Title 40, p. 148. "The plain and unequivocal language of Section 5 of the April 1995 act makes the act retroactively applicable to all pending cases." *State v. Hunter*, 221 Ga. App. 837, 838 (1) (473 SE2d 192) (whole court); see *State v. Martin*, 266 Ga. 244 (466 SE2d 216). As stated in the concurring opinion in *Hunter*, supra, only the General Assembly can correct this undesirable result. To the extent that the State asserts that the certification requirements of OCGA § 40-6-392 (a) (1) (A) and (f) do not apply retroactively to all cases pending on April 21, 1995, it is mistaken. *Hunter*, supra. We will not reverse the correct ruling of the trial court regardless of the reason, if any given therefor. *Krebsbach v. State*, 209 Ga. App. 474 (1) (433 SE2d 649).

We do not here reach the issue whether in each and every case where the statutory certificate has not been provided, including situations where no certificate is provided but the machine had all the required components attached, the result of the chemical analysis test is automatically excluded from evidence. Evidence exclusion is an extreme sanction and not one favored as a matter of course in the law. Suffice it to note an examination of OCGA § 40-6-392 (f) reveals that, notwithstanding any other provision of law, the required certificate when properly prepared and executed shall be admissible in court to satisfy the pertinent requirements of both OCGA § 40-6-392

(a) (1) and of OCGA § 40-5-67.1 (g) (2) (F). This provision reflects that the certificate requirement primarily is an administrative and evidentiary procedure designed to relieve the State from the time-consuming and costly burden of having to produce live witnesses and numerous authenticated business records merely to establish that there has been compliance with all the foundation requirements of subsections (a) and (f) of OCGA § 40-6-392. In this case, however, the State cannot establish by other admissible evidence that these statutory foundation requirements were met, and therefore the trial court properly suppressed the breath test results. Moreover, nothing in this opinion is intended to preclude the State from proving a DUI offense by other admissible evidence. See, e.g., *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737).

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 27, 1996.

*T. Joseph Campbell, District Attorney, Lance T. McCoy, Assistant District Attorney*, for appellant.

*Perrotta & Associates, Gerard P. Verzaal*, for appellee.